**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | |
|---|---|
| STATE OF NEW MEXICO, for the use of WESTERN GRAVEL CONSTRUCTORS, LLC, a Colorado limited liability company,<br><br>        Plaintiff,<br><br>v.<br><br>HALO SERVICES, INC., a New Mexico corporation, and THE OHIO CASUALTY INSURANCE<br><br>        Defendants. | **COMPLAINT**<br><br><br>Civil Case No. _____<br><br> Judge: _____ |

Plaintiff, Western Gravel Constructors, LLC ("Western Gravel"), by and through counsel, hereby files this Complaint and complains of Defendants Halo Services, Inc. ("HALO") and The Ohio Casualty Insurance Company (Payment Bond No. 18L004929)("Ohio"), and for good cause of action alleges as follows:

**PARTIES**

1.      Western Gravel is Colorado limited liability company, with its principal place of business at 3001 N. Townsend Ave., Montrose, Colorado 81401.

2.      The members of Western Gravel as a limited liability company are residents of the State of Colorado.

3.      HALO is a New Mexico corporation, with its principal place of business at 70 CR 4980, Bloomfield, New Mexico 87413.

4.      Ohio is foreign corporation, with its principal place of business at 9450 Seward Road, Fairfield, Ohio 45014.

## JURISDICTION AND VENUE

5.      Western Gravel incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

6.      The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      Pursuant to 28 U.S.C. § 1332, jurisdiction over this matter is proper in the United States District Court for the District of New Mexico.

8.      Pursuant to 28 U.S.C. §1391(b)(1) and (2), venue is proper in the District of New Mexico, because the contract work at issue in this matter was performed for the City of Farmington, State of New Mexico.

## GENERAL ALLEGATIONS

9.      Western Gravel incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

10.     The City of Farmington, New Mexico desired to perform expansion of the Re-Bid of the Among the Waters Trail to join the Centennial Trail near Boyd Park, which includes installing foot bridges, trails, lighting and other construction services.

11.     On or about November 17, 2020, the Farmington City Council approved a contract with HALO for construction of the expansion of the Re-Bid of the Among the Waters Trail (the "Prime Contract") with HALO, as the prime contractor for purposes of N.M.S.A. 1978, §13-4-18, *et seq.* (the "Little Miller Act", to construct the expansion of the Re-Bid of the Among the Waters Trail (the "Project").

12.     Pursuant to and in accordance with the Prime Contract and the Little Miller Act, HALO as principal and Ohio as surety executed and delivered Payment Bond No. 18L004929 (the "Bond") in favor of the City of Farmington. Pursuant to the Bond, HALO and Ohio bound

themselves jointly and severally in the initial penal sum of $1,113,802.08. The Bond was accepted by the City of Farmington. A true and correct copy of the Bond is attached hereto as Exhibit A.

13.     The base contract price for the Prime Contract between the City of Farmington and HALO was approximately $1,113,802.08.

14.     HALO, in turn contracted with Western Gravel as a subcontractor, for purposes of the Little Miller Act, to furnish and provide construction services and material for the Project (the "Subcontract"). A true and correct copy of the Subcontract is attached hereto as Exhibit B.

15.     The base contract price of the Subcontract between HALO and Western Gravel was $1,578,830.

16.     Western Gravel performed its contractual obligations to HALO per the contract and specification requirements.

17.     HALO breached its contract with Western Gravel by failing to pay Western Gravel for the construction services and materials it furnished to HALO for the Project.

18.     Despite Western Gravel providing the concrete services and materials to the Project *per contract and per specification*, HALO breached its contract with Western Gravel by refusing to pay anything to Western Gravel.

19.     Western Gravel submitted a progress billing to HALO totaling $264,404.70 however, HALO failed to pay Western Gravel.

20.     Western Gravel is a proper claimant under the Bond, because:

        a.      HALO has failed to pay Western Gravel for the construction services and materials it furnished to HALO to build the Project;

        b.      HALO, the general contractor, directly contracted with Western Gravel;

c.      More than ninety (90) days have elapsed from the date on which Western

Gravel last furnished construction services and materials to HALO for the Project,

as required by the Little Miller Act;

d.      This action is filed within the one (1) year of the date of final settlement of

the contract between HALO and the City of Farmington; and

e.      Western Gravel has notified the City of Farmington of the filing of this

action.

21.     Pursuant to the Little Miller Act, Western Gravel is entitled to maintain this action

on the Bond against Ohio and its principal HALO.

22.     At all relevant times New Mexico had enacted and in force the New Mexico

Prompt Payment Act governing the timing of payments and payment of interest, attorney fees

and costs in connection with construction contracts in New Mexico.  N.M.S.A. 1978, §57-28-1.

23.     The subcontract between HALO and Western Gravel is a construction contract

governed by the New Mexico Prompt Payment Act.

24.     Pursuant to the New Mexico Prompt Payment Act Western Gravel is entitled to a

pre-judgment interest penalty on amounts not paid by HALO at the rate of one and one-half

percent per month until paid.  N.M.S.A. 1978, §57-28-5.

25.     Western Gravel is additionally entitled to an award of its court costs and

reasonable attorney's fees.  N.M.S.A. 1978, §57-28-11.

**FIRST CLAIM FOR RELIEF**
(Breach of Contract)

26.     Western Gravel incorporates by reference each and every allegation contained in

the preceding paragraphs of this Complaint.

27.     HALO entered into a contract with Western Gravel as indicated above.

28.     Western Gravel substantially performed the material obligations and responsibilities required by the Subcontract and is entitled to payment of all sums due and owing to it.

29.     HALO has refused to pay the outstanding amounts owed to Western Gravel.

30.     HALO is in breach of the Subcontract by refusing to timely process and release payments to Western Gravel.

31.     As a direct and proximate result of HALO's breach of the Subcontract, Western Gravel has suffered damages in an amount of at least $264,404.70, for work performed to date plus interest thereon, costs and attorney's fees.

## SECOND CLAIM FOR RELIEF
### (Little Miller Act Payment Bond)

32.     Western Gravel incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

33.     Pursuant to the Little Miller Act, HALO as principal and Ohio as surety executed and delivered the Bond to the City of Farmington.

34.     Western Gravel was contracted by HALO, the prime contractor, to perform construction services and provided materials to the Project and is a claimant under the Bond.

35.     HALO failed to remit any payment to Western Gravel for the construction services and material furnished to HALO and incorporated into the Project.

36.     Western Gravel is entitled to payment from HALO and Ohio pursuant to the Little Miller Act and Ohio's Bond for the Project.

37.     Western Gravel is entitled to payment in the amount of at least $264,404.70, for labor and materials performed plus interest thereon, costs and attorney's fees.

### THIRD CLAIM FOR RELIEF
(Unjust Enrichment/Quantum Meruit)

38.     Western Gravel incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

39.     Western Gravel has furnished materials to the Project which have conferred a reasonable value upon HALO.

40.     Western Gravel acted as alleged herein with the expectation of being compensated therefor in an amount equal to the reasonable value of the materials furnished and has not acted as a volunteer or intermeddler.

41.     To permit HALO to retain the benefit without compensating Western Gravel would result in the unjust enrichment of HALO at the expense of Western Gravel, which should not be allowed.

42.     The reasonable value of the labor and materials provided by Western Gravel and for which it has not been compensated is at least $264,404.70.

43.     Western Gravel is entitled to payment for the reasonable value of the labor and materials provided plus interest thereon, costs and attorney's fees.

### FOURTH CLAIM FOR RELIEF
(Breach of Duty of Good Faith and Fair Dealing)

44.     Western Gravel incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint.

45.     The Subcontract includes an implied duty of good faith and fair dealing that arises by virtue of New Mexico common law.

46.     HALO breached the duty of good faith and fair dealing by, among other things, failing to honor its obligations to Western Gravel as set forth in the Subcontract and according to industry custom and usage; and by not making payments for labor, goods and services provided

by Western Gravel within a commercially reasonable time or the time frame set forth in the Subcontract.

47.     HALO acted unreasonably under the circumstances in its administration and management of the Project.

48.     HALO's breach of its duties and responsibilities under the Subcontract was in bad faith.

49.     Western Gravel has been damages by HALO's bad faith breach of its obligations under the Subcontract in an amount of at least $264,404.70 for work performed plus interest thereon, costs and attorney's fees.

### REQUEST FOR RELIEF

WHEREFORE, Western Gravel requests the following relief:

1.     As to the FIRST CLAIM FOR RELIEF, for a judgment in favor of Western Gravel and against HALO be rendered in its favor and recover from Western Gravel, in the amount of at least $264,404.70 as a result of HALO's breach of contract for work performed plus interest thereon, costs and attorney's fees.

2.     As to the SECOND CLAIM FOR RELIEF, for a judgment in favor of Western Gravel and against HALO and Ohio in the amount of at least $264,404.70 for the labor, materials, goods, and services provided to HALO plus interest thereon, costs and attorney's fees.

3.     As to the THIRD CLAIM FOR RELIEF, for a decree adjudging that HALO is liable to Western Gravel for the full value and benefit received by HALO, plus interest, under the equitable doctrine of unjust enrichment or quantum meruit in order to prevent the unjust enrichment of HALO at the expense of HALO.

4.      As to the FOURTH CLAIM FOR RELIEF, for Breach of Duty of Good Faith and

Fair Dealing, for damages arising from HALO's breach of contract and breach of its duty of good

faith and fair dealing; for all recoverable costs and reasonable expenses.

5.      For such other and further relief as the Court deems just and proper.

        **DATED** this 14th day of October 2022.

                                    CALVERT MENICUCCI, PC

                                    */s/ Sean R. Calvert* _____
                                    SEAN CALVERT
                                    *Attorney for Plaintiff*
                                    8804 Washington St., NE, Suite E
                                    Albuquerque, New Mexico 87113
                                    (505) 247-9100
                                    scalvert@hardhatlaw.net

**CITY OF FARMINGTON, NEW MEXICO**
PERFOMANCE BOND, FORM AF-11
(Required if Bid Amount is more than $25,000)
BOND NO:  18L004929

KNOW ALL MEN BY THESE PRESENTS:

THAT, Halo Services, Inc., 70 Road 4980, Bloomfield, NM 87413
(Insert name, address or legal title of Contractor)

as Principal, hereinafter called the Contractor, and  The Ohio Casualty Insurance Company
(Insert the legal title of the Surety)

as Surety, hereinafter called Surety, are held and firmly bound unto the City of Farmington, a municipal corporation of San Juan County, New Mexico, as Obligee, hereinafter called Owner, in the amount of ONE MILLION, ONE HUNDRED THIRTEEN THOUSAND, EIGHT HUNDRED TWO DOLLARS AND EIGHT CENTS, plus estimated applicable taxes NINETY ONE THOUSAND, EIGHT HUNDRED  EIGHTY-EIGHT DOLLARS AND SIXTY-SEVEN CENTS ($1,113,802.08 plus estimated applicable taxes $91,888.67), for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally firmly by these presents.

WHEREAS, Contractor has, by written agreement dated November 17, 2020 entered into an agreement with Owner for the construction of Re-Bid for Among the Waters Trail Construction in accordance with drawings and specifications prepared by the City of Farmington which agreement is by reference made a part hereof, and is hereinafter referred to as the agreement.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Contractor shall promptly and faithfully perform said agreement, then this obligation shall be null and void, otherwise, it shall remain in full force and effect.

The Surety, for value received, hereby expressly stipulates and agrees that no change, extension of time, alteration or addition to the terms of the agreement or to the work to be performed thereunder or the specifications accompanying the same shall in any way affect the Surety's obligation on this bond; and the Surety does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this agreement or to the work or specifications.

Whenever Contractor shall be, and declared by Owner to be in default under the agreement, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly;

1.    Complete the agreement in accordance with its terms and conditions, or
2.    Obtain a bid or bids for submission to Owner for completing the agreement in accordance with its terms and upon determination by Owner and Surety of the lowest responsible bidder, arrange for an agreement between such bidder and Owner, and make available as work progresses (even though there should be a default or a succession of defaults under the agreement or agreements of completion arranged under this paragraph) sufficient funds to pay the cost of completion but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.

The Contractor shall guarantee any work performed under this bond against omission of material or defective materials and workmanship for a period of one (1) year following its completion and acceptance.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Owner named herein or the heirs, executors, administrators, or successors of Owner.

Venue upon any suit brought upon this bond shall be in the District Court of San Juan County, New Mexico.

CITY OF FARMINGTON FORM AF-11          EXHIBIT "A"

SIGNED AND SEALED THIS ___19___ DAY OF __November__, 2020.

In presence of:

_____

The Ohio Casualty Insurance Company

_Holly Gallegos_
Surety

By: __Holly Gallegos__
Printed Name

Title: __Attorney-In-Fact__

__72 Maple Ave.__
Street Address

__72 Maple Ave.__
Mailing Address

__Keene, NH 03431__
City, State, Zip Code

__505-326-1111__
Telephone Number

Halo Services/Inc.

_____
Contractor-Principal

By: __Nate Vaughn__
Printed Name

Title: __President__

__70 Road 4980, Bloomfield, NM 87413__
Address

__(505) 632-7007__
Telephone Number

**THIS BOND MUST BE ACCOMPANIED BY A POWER OF ATTORNEY, EFFECTIVELY DATED**
Note:  This bond is issued simultaneously with another bond
Conditioned for the full and faithful payment for all labor
and material of the contract.

## CITY OF FARMINGTON, NEW MEXICO
### LABOR, MATERIAL AND TAX PAYMENT BOND, FORM AF-12

KNOW ALL MEN BY THESE PRESENTS:

THAT, <u>Halo Services, Inc., 70 Road 4980, Bloomfield, NM 87413</u>
(Insert name, address or legal title of Contractor)

as Principal, hereinafter called the Contractor, and <u>The Ohio Casualty Insurance Company</u>
(Insert the legal title of the Surety)

a corporation organized and existing under and by virtue of the laws of the State of <u>New Hampshire</u>
and authorized to do business in the State of <u>New Mexico</u>, hereinafter called the Surety, are held and firmly bound unto the City of Farmington, a municipal corporation of San Juan County, New Mexico, as Obligee, hereinafter called the Owner, in the amount of <u>ONE MILLION, ONE HUNDRED THIRTEEN THOUSAND, EIGHT HUNDRED TWO DOLLARS AND EIGHT CENTS</u>, plus applicable taxes of <u>NINETY ONE THOUSAND, EIGHT HUNDRED EIGHTY-EIGHT DOLLARS AND SIXTY-SEVEN CENTS</u> (<u>$1,113,802.08</u>, PLUS <u>$91,888.67</u> estimated applicable taxes) for the payment whereof Contractor and Surety bind themselves, their heirs, executors, administrators, successors and assigns jointly and severally firmly by these presents.

WHEREAS, Contractor has by written instrument dated <u>November 18, 2020</u>, entered into an agreement described as follows:
Re-Bid for Among the Waters Trail Construction<br>PROJECT # AWAD06, BID # 21-138575R

The work to be performed under this contract shall consist of furnishing all labor, equipment, and materials The City of Farmington is seeking qualified contractors for the construction of approximately 1.5 miles of trail. The Animas River Trail Extension, "Among the Waters", is the westernmost section of river trails within the City of Farmington. The trail head parking is located south of 371 Bisti Highway and west of HWY 64 along the San Juan River.

The first section of existing trail is approximately .75 miles of crusher fine surface extending southwest along the river confluence and terminating at the Farmington ditch head gate. Within this portion, two pedestrian bridges will be installed and approximately 260' of trail surfacing. Trail has been cleared/grubbed and bladed by city crews.

The second section is approximately .40 miles and is the most complex as it traverses steep hillsides. Within this portion, one pedestrian bridge, approximately 3800SF of retainer walls at 7' heights, and all trail surfacing are to be installed. Approximately half of trail has been cleared/grubbed and bladed by city crews.

The third and final section is approximately .40 miles and closely parallels private property. Within this portion, all trail surfacing and work under HWY 64 bridges are to be completed. The majority of trail has been cleared/grubbed and bladed. Additionally, city crews have installed 31 light fixtures.

which agreement is by reference made a part hereof, and is hereinafter referred to as the agreement.

NOW, THEREFORE, the condition of this obligation is such that if the Contractor shall pay as they become due, all just claims for labor performed and materials and supplies furnished and taxes due the State of New Mexico arising out of construction services upon or for the work under said agreement, pursuant to Sections 13-4-18 through 13-4-20 NMSA 1978, whether said labor be performed and materials and supplies be furnished or taxes be accrued under the original agreement or any agreement thereunder, then this obligation shall be null and void; otherwise it shall remain in full force and effect, subject, however, to the following conditions:

The right to sue on this bond accrues only to the Owner and the parties to whom New Mexico Statutes Annotated, 1978, 13-4-18 through 13-4-20, as amended, grant such right; and any such right shall be exercised only in accordance with the provisions and limitations of said statutes.

The Surety, for value received, hereby expressly stipulates and agrees that no change, extension of time, alteration or addition to the terms of the agreement or to the work to be performed thereunder or

## CITY OF FARMINGTON, NEW MEXICO
### LABOR, MATERIAL AND TAX PAYMENT BOND, FORM AF-12

the specifications accompanying the same shall in any way affect the Surety's obligation on this bond; and the Surety does hereby waive notice of any such change, extension of time, alteration or addition to the terms of this agreement or to the work or specifications.

Venue upon any suit brought upon this bond shall be in the District Court of San Juan County, New Mexico.

This bond is issued simultaneously with another bond conditioned for the full and faithful performance of the contract.

SIGNED AND SEALED this  19  day of  November , 2020.

In presence of:

_____

The Ohio Casualty Insurance Co.

*Holly Gallegos*
Surety

By:  Holly Gallegos
        Printed Name

Title:  Attorney-In-Fact

72 Maple Ave.
Surety's Street Address

72 Maple Ave.
Surety's Mailing Address

Keene, NH 03431
City, State, Zip Code

505-326-1111
Telephone Number

Halo Services, Inc.

Contractor-Principal

By  Nate Vaughn
        Printed Name

Title:  President

70 Road 4980, Bloomfield, NM 87413
Address

(505) 632-7007
Telephone Number

**THIS BOND MUST BE ACCOMPANIED BY A POWER OF ATTORNEY, EFFECTIVELY DATED**
Note:  This bond is issued simultaneously with another bond
Conditioned for the full and faithful performance
of the contract.

This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.


**Liberty Mutual.**
SURETY

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

Certificate No: **8203052-975756**

# POWER OF ATTORNEY

**KNOWN ALL PERSONS BY THESE PRESENTS:** That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, Jacqueline A. Farmer, Holly Gallegos, Lyle Love, Jonale Lowe, Breanna Lucas, Angel Medina

all of the city of _____ Farmington _____ state of _____ NM _____ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

**IN WITNESS WHEREOF,** this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this ____30th____ day of ____January____ , ____2020____ .

 

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company
West American Insurance Company

By: _David M. Carey_

David M. Carey, Assistant Secretary

State of PENNSYLVANIA
County of MONTGOMERY ⟩ ss

On this ____30th____ day of ____January____ , ____2020____ before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

**IN WITNESS WHEREOF,** I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



**COMMONWEALTH OF PENNSYLVANIA**
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2021
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_

Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS:** Section 12. Power of Attorney.
Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII – Execution of Contracts:** Section 5. Surety Bonds and Undertakings.
Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

**IN TESTIMONY WHEREOF,** I have hereunto set my hand and affixed the seals of said Companies this ____19____ day of ____November____ , ____2020____ .

  

By: _Renee C. Llewellyn_

Renee C. Llewellyn, Assistant Secretary

*(left margin, vertical text)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin, vertical text)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS-12873 LMIC OCIC WAIC Multi Co_12/19

## MASTER SERVICE AGREEMENT
**Agreement No.:** 2020-0001

This MASTER SERVICE AGREEMENT ("Agreement") is made and entered into this __23rd__ day of __November__, 20 __20__, between **HALO SERVICES INC.**, whose address is 70 CR 4980, Bloomfield, NM 87413 ("Company") and , __Western Gravel Constructors__ whose address is __3001 N. Townsend Avenue, Montrose, CO 81401__ ("Contractor"). This Agreement shall govern the Work performed by Contractor for Company in conjunction with one or more Work Orders.

<u>Introduction</u>

Contractor understands that Company maintains a workplace free of drugs, alcohol and weapons as required by laws, ordinances, rules and regulations. Contractor will implement and enforce Company's policies and procedures to ensure maintenance of a drug and alcohol-free workplace.

In addition, Contractor shall perform all Work in a healthy, safe and environmental conscientious manner, and will take all reasonable and necessary action to protect persons, property and the environment. Contractor shall do its utmost to meet these standards. Contractor employees shall be trained in and acknowledge understanding of individual authority, responsibility and obligation to STOP a job if the employee becomes aware of a hazard or if the employee is unclear of their instructions.

Company shall have the right in its sole discretion to suspend Work for as long as necessary to prevent or stop any violations of health, safety and environmental concerns or problems.

Neither execution of this Agreement, nor anything contained herein, shall obligate Company to order Work from Contractor or obligate Contractor to accept Work from Company.

1.      Definitions.

a.      "Affiliate" means, with respect to a party, any individual, partnership, corporation or other entity directly or indirectly controlling, controlled by, or under common control with the party.

b.      "Contract Price" shall mean the compensation for goods or services that Company, and Contractor agree will be paid to Contractor at the time and in the manner provided for in a Work Order.

c.      "Contractor Group" shall mean Contractor (as defined above), its Affiliates and Subcontractors, and their respective directors, officers, managers, employees, representatives and agents. Such Group shall be deemed to ratify and agree to be bound by this Agreement.

d.      "Contractor Representative" means the individual designated by Contractor to represent Contractor in connection with all matters related to the Work.

e.      "Defect" means an error, fault or nonconformance with relevant specifications for material or equipment supplied, or goods sold, or in services provided by Contractor Group.

f.      "Company Representative" means the individual designated by Company to represent Company in connection with all matters related to the Work.

EXHIBIT "B"

g.      "Company Group" shall mean Company (as defined above) its Affiliates, co-owners at the Site, joint venturers, partners, other contractors and subcontractors, and their respective directors, officers, managers, employees, representatives and agents. Such Group shall be deemed to ratify and agree to be bound by this Agreement.

h.      "Person" shall mean, without limitation, an individual, corporation, partnership (general or limited) limited liability company, joint venture, estate, trust, association, organization or other entity or governmental body or agency, and any successors.

i.      "Proprietary Information" shall mean information which Contractor or a Subcontractor acquires from Company, directly or indirectly, and all information which arises out of or is related to the Work, and all proprietary processes involved in the Work, including, without limitation, information concerning Company's present and future business plans and information about Company's operations.  Proprietary Information shall not include information (i) which, at the time of disclosure, is in the public domain; (ii) which enters the public domain after disclosure, except where such entry is the result of Contractor's or Subcontractor's breach of this Agreement; (iii) which, prior to disclosure, was already in Contractor's or in Subcontractor's possession without limitation on disclosure to others, or (iv) which, subsequent to disclosure, was obtained by Contractor or by Subcontractor from a third party who is lawfully in possession of the information and is not subject to a contractual or fiduciary relationship with Company with respect to such information.

j.      "Site" shall mean the location at which Contractor is performing the Work for Company.

k.      "Subcontractor" shall mean a party that Contractor engages to perform all or a part of the Work.

l.      "Warranty Period" means (i) in the case of goods, material or equipment supplied or sold, the period commencing on the date the goods, materials or equipment are received by Company, or, if installed by Contractor, the date of such installation and ending twelve (12) months thereafter, and (ii) in the case of services provided, the period commencing the date Contractor completes such services and ending twelve (12) months thereafter.

m.      "Work" shall mean the performance of work, providing of services or the supply or sale of goods, material or equipment by Contractor to Company from time to time under a particular Work Order.

n.      "Work Order" shall mean the directions from Company to Contractor, which may be oral or written, to provide Company with Work at a specific time, place and cost.

2.      <u>Conduct of Work.</u>  Contractor shall perform the Work desired from time to time with due diligence and in a good and workmanlike manner to completion. This Agreement shall not be considered an exclusive contract. Company shall have the right to employ other Persons to perform the same or similar Work.

a.      <u>Contractor's Responsibilities.</u>  Contractor, at its sole cost, risk and expense shall:

i.      Furnish the services of all personnel and supervisors required to complete the Work.

ii.      Supply all machinery, equipment, tools, materials, transportation and supplies required to complete the Work.  Contractor shall store all such machinery, equipment, tools and supplies in an orderly manner in a designated storage area at the Site.

iii.    Provide all necessary safeguards as dictated by current industry standards for the protection of all aspects of the Work and all persons involved in the Work.

iv.    Obtain and provide evidence to Company of all permits and licenses that are required to perform the Work except for air permits and EPA permits.

v.    Pay: (i) any occupation or similar taxes and all required sales, use or consumer taxes; (ii) all required payroll taxes, charges for social security, unemployment compensation, and retirement pensions or benefits to be made with respect to the wages and salaries of persons employed by Contractor that are imposed by federal, state and local laws, rules or regulations; and (iii) for all labor and materials furnished by Contractor for the Work and the charges of all Subcontractors.

vi.    Take such other action as may be requested by Company and agreed to by Contractor.  Contractor shall be responsible for Work performed, material and equipment supplied, and goods sold by an Affiliate, Subcontractor, vendor or supplier of Contractor.

vii.    Upon termination of the Work, promptly return to Company any Company owned equipment, supplies and tools in Contractor's possession.

b.    <u>Company's Responsibilities.</u>    Company shall:

i.    Furnish materials and equipment, if any, which Company has agreed to furnish in the applicable Work Orders.

ii.    Provide the Site for the Work, access to the Site and adequate space on or near the Site as may be necessary for Contractor's Work subject to Company's access to site(s) provided by Company's customer(s).

3.    <u>Payment of Contract Price/Invoicing.</u>  The Contract Price shall be due the later of (i) the date the Work is found to be satisfactory by Company or (ii) thirty (30) days after Company's receipt of an invoice for the Work.  Contractor shall submit invoices no later than thirty (30) days following the completion of Work under a specific Work Order.  Contractor shall submit invoices and supporting documents electronically upon Company's request.  Otherwise, Contractor shall submit invoices accompanied by such certificates and documents as company may request to:

Halo Services Inc.
Attn. Accounts Payable
70 CR 4980
Bloomfield, NM   87413

If Company and Contractor agree, invoicing may be done on a monthly basis in lieu of a job basis. Payment by Company shall not be considered as acceptance or evidence of approval of Work.

If Company disputes any invoice, in whole or in part, Company shall promptly notify Contractor of the dispute and pay the undisputed portion. Company and Contractor shall endeavor to settle and adjust any disputed amount as soon as possible.

4.    <u>Warranties:</u>

a.    For services provided, Contractor warrants for the Warranty Period that the services: (i) are in accordance with the specifications stated in the applicable Work Order, and (ii) have been competed in accordance with applicable codes and with sound engineering practices.

b.      For goods sold or material and equipment manufactured or supplied by Contractor or Subcontractor, Contractor warrants: (i) good and merchantable title to such goods, material or equipment; (ii) that such goods, material or equipment will be free from Defects in material and workmanship during the Warranty Period; (iii) that such goods, material or equipment will conform to applicable specifications and drawings stated in the applicable Work Order, or (iv) if not manufactured or produced to designs that Company furnishes, such goods, material or equipment will be free from Defects in design during the Warranty Period.

c.      Company may require Contractor, at no cost to Company, to redesign, resupply or otherwise correct a Defect or to otherwise remedy a breach of the foregoing warranties, whether or not the Work has been accepted.

5.      <u>Inspection and Acceptance.</u>

a.      <u>Inspection and Testing of Material and Equipment.</u>   Contractor shall be responsible for inspecting and testing materials and equipment that constitute part of the Work. Company Representative shall have the right at any time to inspect and test the Work at all places and stages of production and installation, and such action shall not be treated as either discharging Contractor's responsibility or constituting acceptance of the Work by Company.

b.      <u>Care, Custody and Control.</u>   When Contractor determines the Work or a discrete portion of the Work is ready for initial start-up operation or service, Contractor Representative shall advise Company Representative in writing. At that time the care, custody and control of Work, or such portion thereof, shall pass to Company unless Company Representative advises Contractor within five (5) days thereafter that the Work or the portion of the Work is not ready for initial start-up operation or service.  Company shall assume risk of loss or damage from and after the date of transfer.  Transfer of care, custody and control of the Work, or a portion of it, to Company pursuant to this Section 5.b. does not constitute acceptance by the Company pursuant to Section 5.c.

c.      <u>Acceptance of Work.</u>   Within a reasonable time after either performance tests are complete or the transfer of care, custody and control of all of the Work to Company has been made, Company Representative shall advise Contractor verbally or in writing of any Defects in the Work that Company has discovered.  If Company Representative does not give notice of Defects within a reasonable time, or if after Contractor corrects the Defects, and Company Representative does not advise Contractor verbally or in writing within fifteen (15) days of the completion of such corrective action of any further Defects, Company shall be deemed to have accepted the Work. Provided, however, Contractor shall remain responsible for any Defects discovered during the Warranty Period pursuant to Section 4.

6.      <u>Patents.</u>        Contractor shall defend, indemnify and hold Company harmless from and against any action, claim or demand, and all costs and expenses, including attorneys' fees, that arise in connection with any infringement or alleged infringement of applicable patents, trademark, copyright or intellectual property laws, ordinances, rules or regulations with respect to the Work.

7.      <u>Proprietary Information: Advertising.</u>        Contractor shall not use any Proprietary Information except in connection with the Work and shall not disclose any Proprietary Information or details of the Work to any third party except to those who are to perform the Work, and then only to the extent such disclosure is required to perform the particular portion of the Work. Further, the third party must agree in writing to keep such Proprietary Information confidential. Contractor shall take all reasonable precautions to safeguard any documents containing Proprietary Information which Company provides to Contractor under this Agreement.  Contractor shall obtain Company Representative's prior approval of any photographs and the text of any announcement or publication concerning the Work that either Contractor or any Subcontractor wishes to make.

8.      Risk of Loss; Liens; Clean-up; Storage.

     a.      Risk of Loss.          Contractor is responsible for and shall replace, repair or reconstruct and shall furnish such material, equipment, or supplies that Contractor furnishes for the Work which are lost, stolen, damaged or destroyed prior to the time that care, custody and

control thereof are transferred to Company pursuant to Section 5.b. regardless of the cause of the loss, theft, damage or destruction.

     b.      Liens.   Contractor shall make timely payments to all workmen, materialmen and Subcontractors and take all other action necessary to keep the Site and the Work free of liens by third parties.  Company may withhold payment of amounts due to Contractor until Company has been furnished with proof satisfactory to it that either all amounts have been paid or Contractor has provided for satisfactory payment.  If a third party lien attaches to the Site of the Work, Company may make any payment necessary to discharge the lien, and it may offset the amount of the lien together with damages, court costs and reasonable attorneys' fees that it incurs because of the lien or its discharge, against any payment owing or to be owed to Contractor.
NOTWITHSTANDING THE FOREGOING, Company agrees that it will not pay any such claim or indebtedness as long as it or they are being actively contested by Contractor, and Contractor is taking or has taken all action necessary (including the posting of a bond when appropriate) to protect the property interests of Company and any other party affected by such claim or indebtedness.

     CONTRACTOR SHALL DEFEND, INDEMNIFY AND HOLD COMPANY HARMLESS FROM AND AGAINST ANY THIRD-PARTY LIENS ARISING OUT OF OR CONNECTED WITH THE WORK, INCLUDING COURT COSTS AND REASONABLE ATTORNEYS' FEES INCURRED AS A RESULT OF SUCH THIRD-PARTY LIENS.  Contractor shall provide a list of the names and contact numbers for all Subcontractors used in performing the Work.

     c.      Clean-up.       Contractor shall remove its personnel, agents, representatives, material and equipment from the Site upon completion of the Work and shall clean up the Site in a good and workmanlike manner and to Company's reasonable satisfaction.  If Contractor fails to remove its personnel, agents, representatives, material and equipment and clean up the Site within thirty (30) days after completion of the Work at the Site, Company may remove the personnel, agents, representatives, materials and equipment and clean up the Site at Contractor's expense and deduct its costs from sums that Company owes Contractor.  Contractor shall be responsible for immediately responding to and remediating all spills on Company property or leases resulting from the Work, and in a manner consistent with Company's spill prevention, control and countermeasure ("SPCC") plan, or as otherwise directed by Company; and in compliance with applicable laws, ordinances, rules or regulations.

     d.      Storage.        Contractor is responsible for providing secondary containment structures to prevent leaks or spills from contacting soils. Contractor shall ensure that all products or chemicals used in connection with the Work are stored in appropriate containers and that all drums are stored on pallets or other suitable structures in accordance with storm water, SPCC, and other applicable laws, ordinances, rules or regulations.  Contractor shall reimburse Company for all costs, expenses, damages or injuries incurred to repair storm water structures or to reclaim environmental damage resulting from or relating to the Work.

9.      Maintenance and Audit of Records.        Contractor shall maintain for at least three (3) years after the Work is completed or this Agreement is terminated, whichever is later, complete and accurate records (including invoices, payroll sheets and supporting documentation) of all costs which have been charged or are chargeable to Company.  Company shall have the right at

any reasonable time to inspect and audit Contractor's records related to the Work.  If errors are found in billings or payments, the parties shall promptly adjust and correct the errors.

**THIS AGREEMENT CONTAINS PROVISIONS REQUIRING ONE PARTY TO BE RESPONSIBLE FOR THE NEGLIGENCE, STRICT LIABILITY OR FAULT OF THE OTHER PARTY.**

10. <u>Indemnities</u>

a. Subject to applicable laws, ordinances, rules or regulations, Contractor hereby agrees to release, defend, indemnify and hold Company harmless from and against any and all loss, cost, damage, or expense of every kind and nature (including, without limitations, fines, penalties, remedial obligations, court costs and expenses and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity provision (hereinafter referred to collectively as "Indemnifiable Claims") arising out of bodily injury (including sickness to or death of persons and losses therefrom to relatives or dependents) to the Contractor Group, or loss or destruction of property or interests in property of the Contractor Group, in any manner caused by, directly or indirectly resulting from, incident to, connected with or arising out of performance of the Work WHETHER OR NOT RESULTING IN PART FROM THE CONCURRENT OR COMPARATIVE NEGLIGENCE OF THE COMPANY.  Contractor agrees that this voluntary and mutual indemnity agreement will be supported by insurance of the types and in at least the minimum amounts required in Section 11 and shall be primary to any other insurance provided by the Company.  Contractor agrees to consult and cooperate in good faith with Company in the selection and retention of legal counsel to represent Company in any action, claim, suit, litigation, arbitration or government investigation ("Action") with respect to an Indemnifiable Claim.  NOTWITHSTANDING THE FOREGOING, Company may select its own counsel to participate in any Action at Company's sole cost and expense; provided, however, Company's right to participate in any Action shall not limit Contractor's obligations under this Section 10.a.

b. Subject to applicable laws, ordinances, rules or regulations, Contractor hereby agrees to release, defend, indemnify and hold the Company harmless from and against any and all Indemnifiable Claims by third parties (i.e., parties not included in the Company Group or Contractor Group) arising out of bodily injury (including sickness to or death of persons and losses therefrom to relatives or dependents)or loss or destruction of property or interests in property in any manner caused by, directly or indirectly resulting from, incident to, connected with or arising out of the performance of the Work.

c. Each party shall be responsible for, and hereby agrees to defend, indemnify and hold the other party harmless from and against, any and all Indemnifiable Claims arising out of or with respect to, the emission, discharge or release by such indemnifying party or by a Subcontractor of such indemnifying party, in connection with the Work, or transportation to and from the Site, of chemical pollutants, contaminants, waste, petroleum waste, used oil, toxic substances, hazardous substances or any substances that are regulated by any government entity under environmental laws.

d. REDRESS UNDER THE INDEMNITY PROVISIONS STATED IN THIS SECTION 10 SHALL BE THE EXCLUSIVE REMEDIES AVAILABLE TO THE PARTIES FOR THE MATTERS, CLAIMS AND DAMAGES COVERED BY SUCH PROVISION.

11. <u>Insurance</u>. Contractor shall secure and maintain, and shall require its Subcontractors to secure and maintain, during the term of this Agreement, the insurance coverage stated in the attached Schedule I.

ALL LIABILITY COVERAGE (INCLUDING EMPLOYER'S LEGAL LIABILITY) CARRIED BY CONTRACTOR WITH RESPECT TO THE LIABILITIES ASSUMED BY CONTRACTOR HEREUNDER SHALL EXTEND TO AND PROTECT THE COMPANY GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCE, AND SHALL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITING THE COMPANY GROUP.  THE LIMITS AND COVERAGES OF THE INSURANCE OBTAINED BY CONTRACTOR, EXCEPT TO THE EXTENT PROHIBITED OR REQUIRED BY LAW OR STATUTE, SHALL IN NO WAY LIMIT THE LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR.  ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES (EXCEPT FOR WORKER'S COMPENSATION OR EMPLOYER'S LIABILITY POLICIES) SHALL NAME THE COMPANY GROUP AS AN ADDITIONAL INSURED AND CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE COMPANY GROUP.

This Section 11 provision shall be independent of any obligations Contractor has under Section 10 hereof.  Contractor's insurance carrier(s) will provide Company, as evidence that the required insurance coverage has been obtained, with a certificate of insurance reflecting the amount of any deductibles.  Each of Contractor's insurance policies shall provide that it cannot be cancelled, materially altered, or allowed to lapse without at least thirty (30) days prior written notice by the insurance carrier to Company.

Neither review nor failure to review the certificate(s) of insurance by company shall constitute approval of such insurance or be deemed to waive or diminish Company's rights under this Agreement.

12.    <u>Independent Contractor.</u>        Contractor shall be an independent contractor with respect to the Work, and Contractor or any Subcontractor, or their respective officers, managers, employees or agents, shall not be deemed the agent, representative, employee or servant of Company.  Contractor and any Subcontractor shall have complete and sole control over their respective employees and the details of the Work performed and the methods by which the Work is accomplished. It is understood that Company is interested only in the results that Contractor obtains and not the means whereby the Work is to be accomplished.

13.    <u>Compliance with Company Rules, Practices and Policies.</u>        Contractor shall be familiar with and comply with, and shall cause its Subcontractors and their respective employees, agents or representatives, to be familiar with and comply with all Company's rules, practices and policies (collectively referred to herein as "Company Policies") provided to Contractor, and such other Company Policies and any amendments thereto as are provided to Contractor from time to time.  Company Policies relating to the safety and security of persons and property, or protection of the environment, may be stated in a Contractor Expectations document provided to Contractor along with this Agreement, and in documents provided to Contractor on the terms and conditions of Contractor's Substance Abuse program as modified by Company requirements.  Contractor shall comply with, and shall cause its Subcontractors and their respective employees, agents or representatives to comply with all federal, state and local laws, rules or regulations applicable to the Work, including but not limited to the Fair Labor Standards Act, OSHA, OSHA Hazard Communication Standard under 29 CFR 1910, and all environmental laws, rules or regulations, including, but not limited to, disclosure and transportation of hazardous and toxic substances.

14.    <u>Compliance with Applicable Laws, Ordinances, Rules and Regulations.</u>

In addition to compliance with all applicable laws, ordinances, rules or regulations, Contractor Group shall comply with the following:

a.      Safety laws, ordinances, rules and regulations, including, but not limited to the United States Department of Transportation, the Occupational Safety and Health Act of 1970, and Occupational Safety & Health Administration;

b.      49 CFR Parts 191, 192, 193, 195, 199 and 40 concerning pipeline safety regulations for drug and alcohol testing on a pipeline or LNG facility;

c.      49 CFR 391 and 394 concerning drug and alcohol testing for motor carriers;

d.      Monitoring Contractor with appropriate access to Site and Contractors' records for drug and alcohol testing, with or without notice, to Contractor Group.; Monitoring may include but is not limited to accessing Contractor Group records available from National Compliance Management Services, Inc., Veriforce, PEC, ISNetworld, TPS Alert;

e.      All products, commodities or services shall be furnished in compliance with the current Title VI and Title VII of the Civil Rights Act of 1967, the Equal Pay Act of 1963, Rehabilitation Act of 1974, the Immigration Reform Control Act of 1986, Fair Labor Standard Act of 1938, and appropriate Executive Orders issued by the President of the United States of America;

f.      All funds received by Contractor Group shall not be used for any purposes prohibited by the Foreign Corrupt Practices Act; and

g.      Equal Opportunity Clause and Affirmative Action Clauses in 41 CFR 60.

15.     <u>Company Policy Regarding Drugs, Alcohol and Weapons.</u>

Contractor agrees to advise its directors, officers, managers, employees, representatives, agents and Subcontractors that it is the Company's policy that:

a.      The consumption, use, possession or distribution of illegal or unauthorized drugs and drug-related paraphernalia; the consumption, use, possession or distribution of alcoholic beverages; and the use, possession or transportation of firearms, explosives or weapons on the Site is prohibited;

b.      Entry on or the presence on the Site by any person, including Contract Group, Contractor, Subcontractor, guests or visitors constitutes consent for Company to conduct searches, whether announced or unannounced, of the person, a person's personal effects or motor vehicle for such prohibited items as well as consent to drug testing at any time while on the Site.  Contractor employees may be subject to unannounced en masse drug and alcohol testing. Such tests are scheduled at the sole discretion of the Company or its customers.  This includes the determination of the scope and the timing of such testing;

c.      Any person found in violation of this Company Policy or who refuses to permit a search or testing for drugs, alcohol, firearms, explosives or weapons may be removed and barred from the Site; and

d.      Any person in the Contractor Group who tests positive for illegal drugs or unauthorized alcohol as a result of a test conducted on the Site, or upon other request by Company due to a Person's lack of competence, qualification, experience or conduct will be removed from any further performance or services under this Agreement.

If Contractor Group fails to comply with Section 15 of this agreement, such failure shall constitute a substantial or material breach of this Agreement.

16.     <u>Default and Termination.</u>

a.      The provisions of Section 16.b. shall apply if any of the following events occur: (i) Contractor becomes insolvent, or insolvency, receivership or bankruptcy proceedings are commenced by or against Contractor; (ii) Contractor materially violates laws, ordinances rules or regulations applying to the Work or disregards instructions of Company; (iii) except as provided in Section 19, Contractor fails, neglects, refuses, or is unable to provide ample supervision, labor, materials or equipment to perform the Work at a rate and in a manner deemed sufficient by

Company; (iv) Contractor allows any third party liens to be placed against the Work or the Site; or (v) Contractor defaults in its performance of any other material provision of this Agreement.

      b.     If an event described in Section 16.a. occurs, the following shall apply:

          i.     Company, without prejudice to any other right or remedy, may terminate this Agreement by giving notice of termination to Contractor, except that in the case of a default that may be corrected, Contractor shall be given a reasonable time to correct same.

          ii.     Contractor shall, if requested, withdraw from the Site and assign to Company such of Contractor's subcontracts as Company may request and Contractor shall remove the materials, equipment, tools, and instruments used by Contractor in the performance of the Work.

          iii.     Company shall have the right to finish the Work itself or with the assistance of third parties.

          iv.     Company shall be entitled to withhold the payment of any further sums due to Contractor until such Work is completed.  Company and Contractor shall then determine by mutual agreement the amount, if any, of excess cost incurred by Company to complete the Work and the amount to which Contractor is entitled for its performance of the Work up to the date of such termination.

      c.     Company may, in its absolute discretion, terminate the Work without cause at any time by giving written notice of termination to Contractor pursuant to Section 18.  If the Work is terminated by Company without cause, Company and Contractor shall have the following rights, obligations and duties:

          i.     Company shall assume and become liable for all obligations and commitments that Contractor may have previously undertaken or incurred in good faith in connection with the Work, and Contractor shall be entitled to all rights, setoffs, and benefits held by Contractor in connection with such commitments.  Contractor agrees to execute all instruments and take all steps required to vest such rights, setoffs and benefits in Company.

          ii.     Company shall pay Contractor for all Work performed prior to such termination.

17.    <u>Title.</u>        Title to all Work completed or in the course of construction at the Site and to all materials, equipment and supplies which become a part of the Work or are used in the construction thereof, except Contractor's tools, equipment and supplies, shall pass to Company at such time as they are installed in their permanent positions and Company accepts care, custody and control of the Work pursuant to Section 5.b.  Transfer of title shall not otherwise affect the parties' rights under this Agreement.

18.    <u>Terms and Termination.</u>     Except as otherwise stated herein, this Agreement shall be for a term of one (1) year from the date hereof and from month-to-month thereafter until terminated.  Either party may terminate this Agreement at any time, with or without cause, on not less than thirty (30) days prior written notice of such termination.  Any such termination shall not affect any rights or obligations which have accrued under this Agreement.

19.    <u>Force Majeure.</u>     Any delay in or failure to perform by a party, other than the payment of money, shall not constitute a default that exposes it to liability for breach if and to the extent the delay or failure to perform is caused by an occurrence beyond the reasonable control of the party, including, but not limited to, an act of God or the public enemy; expropriation or confiscation of facilities; compliance with an order or requirement or any appropriate governmental authority; act of war, rebellion or sabotage or damage resulting therefrom; fire,

flood, explosion or accident; riots or strikes or other concerted acts of workmen; inability after diligent effort to obtain necessary licenses or permits; or any other cause, whether or not of the same class or kind as those specifically stated above, which is not within the control of the party and which, by the exercise of reasonable diligence, the party is unable to prevent or remedy.  In the event of force majeure, the party claiming force majeure shall furnish the other party with written notice or by telephone immediately confirmed in writing, stating the full particulars of the force majeure claimed, as soon as possible after the occurrence of the force majeure. The obligations of that party, so far as they are affected by such force majeure, shall be suspended during the continuance of any inability so caused, but for no longer.  The party relying upon such force majeure shall use due diligence and all reasonable efforts (including reasonable expenditure of money) to overcome the cause of force majeure.  If a force majeure event exceeds thirty (30) days, either party may cancel the Work under the applicable Work Order.

20.    <u>Commissions, Rebates or Fees</u> .       Neither Contractor nor any Subcontractor shall pay any commission, rebate, fee or other remuneration to any officer, manager, employee, representative or agent of Company, or each other, in connection with the Work nor provide any gift or entertainment of significant value, or provide services or sell goods at less than fair market value to any officer, manager, employee, representative or agent of Company.

21.    <u>Assignments and Subcontractors.</u>       Neither party may assign or subcontract its rights or duties under this Agreement, except to an Affiliate, without the prior consent of the other party, which consent shall not be unreasonably withheld. However, except that subcontracts by Contractor for services valued at less than five hundred dollars ($500.00) shall not require Company approval.  An assignment, delegation or subcontract in violation of this Section 21 shall be void.  Consent to assign given by a party shall not relieve the other party of responsibility for performance of its obligations under this Agreement.  Contractor shall supply Company with a written list of the names and contact information for all Subcontractors performing the Work, and Contractor shall update the list as additional Subcontractors are engaged by Contractor to perform the Work.

22.    <u>Waiver.</u>       The waiver by either party of a breach or default by the other party shall not be deemed a waiver of any different or later breach.

23.    <u>Conflicts.</u>       In the event of a conflict, this Agreement controls over any Work Order, or the terms and conditions in Contractor's or Company's purchase orders, field tickets, invoices, statements, or other type of agreement, or document used by either party in the normal course of business, whether oral or written, signed or unsigned.

24.    <u>Applicable Law.</u>       The provisions of this Agreement shall be governed by the laws of the State of New Mexico, without giving effect to any conflict of law provisions.  Any judicial proceeding brought hereunder shall be brought exclusively in the District Court for the County of San Juan, State of New Mexico.  Each party hereby consents to the jurisdiction of such court and waives any defense or objection to such jurisdiction or venue.

25.    <u>Notices.</u>       All notices and other communications required by this Agreement shall be in writing and deemed duly given three (3) business days after being sent by certified mail, return receipt requested, to the address stated herein.  Notice by personal delivery, ordinary mail, facsimile, or electronic mail shall be deemed given upon actual receipt by such other party.  A party may change the address for notices by giving the other party notice of such change in the manner stated herein.

26.    <u>Entire Agreement.</u>       This Agreement and any Work Order between Company and Contractor constitute the entire agreement between the parties on the subject matter referred to therein and supersede all prior negotiations, agreements and correspondence.  This Agreement may be changed only by a written instrument signed by the parties.

27.    <u>Severability.</u>    If any clause or provision of this Agreement is void, illegal or unenforceable, the other clauses or provisions hereof shall remain in full force and effect, and the clauses or provisions that are determined to be void, illegal or unenforceable shall be limited so that they remain in effect to the extent permitted by law.  The indemnity obligations in this Agreement shall be effective to the maximum extent permitted by applicable law, ordinance, rule or regulation.  In particular, but without limiting the generality of the foregoing sentence, if it is judicially determined that the monetary limits of insurance required hereunder or the indemnities voluntarily assumed hereunder exceed the maximum permitted under applicable law, the Parties hereby agree that the indemnities or the insurance requirements shall be deemed amended to conform to the maximum permitted under applicable law, ordinance, rule or regulation.

28.    <u>Captions and Headings.</u>        The captions and headings used in this Agreement are intended for convenience only and shall not be used for purposes of construction or interpretation.

29.    <u>Arbitration.</u>    Any disputes between the parties arising out of or in connection with this Agreement shall be fully and finally settled by arbitration, before one or three arbitrators, in accordance with the most current New Mexico Uniform Arbitration Act.  Such arbitration shall be conducted in San Juan County, New Mexico.  Each party shall pay its own costs and attorney fees, but the parties shall equally pay the costs and fees of the arbitrator(s)..

DATED as of the date first above written.

**CONTRACTOR:**

Western Gravel Constructors LLC

Signature: _____

By: _Drew L Abbott_____

Title: _Managing Member_____

Address: _3001 N. Townsend Ave._____

_____Montrose, CO 81401_____

Phone: _970-497-5678_____

Fax: _970-249-0950_____

**COMPANY:**

HALO SERVICES INC.

Signature: _____

By: _Nate Vaughn_____

Title: _President_____

Address:

70 CR 4980, Bloomfield, NM  87413

Phone: 505-632-7007

Fax: 505-632-2666

**SCHEDULE I TO MASTER SERVICE AGREEMENT**
**(Halo Services Inc.)**

**INSURANCE REQUIREMENTS**

In accordance with the Master Service Agreement, Contractor shall, at its sole cost and expense, obtain and continuously carry during the Term the following minimum insurance coverage or other underlying limits with reputable and reliable insurers acceptable to Company and rated "A-VII' or better by AM Best.

Certificate(s) of insurance showing the above-described insurance coverage shall be provided by Contractor or its insurance agent to Company on at least an annual basis.

**Commercial General Liability**

| Bodily Injury and Property Damage | $1,000,000.00 | Each Occurrence |
| | $2,000,000.00 | General Aggregate |
| | $2,000,000.00 | Completed Operations/ Products Aggregate |

Company must be added as an Additional Insured for Commercial General Liability Insurance.

**Automobile Liability (required where Contractor operates a motor vehicle in the course of performing the Work)**

| Bodily Injury | | $1,000,000.00 | Each Person |
| | | $1,000,000.00 | Each Occurrence |
| Property Damage | | $1,000,000.00 | Each Occurrence |
| | or | $1,000,000.00 | Combined Bodily Injury |

**Worker's Compensation Insurance**

Certificate of Insurance must be provided to Company showing Worker's Compensation Insurance covering Contractor and all of Contractor's personnel engaged in performing the Work in compliance with the statutory requirements of the States where the Work is being performed

Employers' Liability Insurance          $100,000.00 Each Accident

**Other Insurance**

Such insurance in the types and amounts as may be required by applicable law, ordinances, rules or regulations.

haloMSAoriginal



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
11/23/2020

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: Annette Campbell | | |
|---|---|---|---|
| CCIG<br>155 Inverness Drive West<br>Englewood CO 80112 | PHONE (A/C, No, Ext): 720-330-7927 | | FAX (A/C, No): 720-330-7927 |
| | E-MAIL ADDRESS: Collin.Fields@thinkccig.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| License#: 45339  WESTGRA-01 | INSURER A : Travelers Casualty and Surety | | 31194 |
| INSURED<br>Western Gravel Constructors, LLC<br>3001 N. Townsend Ave.<br>Montrose, CO 81401 | INSURER B : Pinnacol Assurance | | 41190 |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES    CERTIFICATE NUMBER: 551505625    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | X COMMERCIAL GENERAL LIABILITY | Y | Y | CO9P30699220 | 6/13/2020 | 6/13/2021 | EACH OCCURRENCE | $ 1,000,000 |
| | CLAIMS-MADE  X OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 500,000 |
| | | | | | | | MED EXP (Any one person) | $ 10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | POLICY  X PRO-JECT  LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| A | AUTOMOBILE LIABILITY | Y | Y | BA9P30970020 | 6/13/2020 | 6/13/2021 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | X ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | OWNED AUTOS ONLY  SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | X HIRED AUTOS ONLY  X NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X UMBRELLA LIAB  X OCCUR | Y | Y | CUP9P31058720 | 6/13/2020 | 6/13/2021 | EACH OCCURRENCE | $ 2,000,000 |
| | EXCESS LIAB  CLAIMS-MADE | | | | | | AGGREGATE | $ 2,000,000 |
| | DED  X RETENTION $ 10,000 | | | | | | | $ |
| B | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N<br>ANYPROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?  N/A<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | Y | 4217709 | 7/1/2020 | 7/1/2021 | X PER STATUTE  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 1,000,000 |
| A | Leased/Rented Equipment<br>Total Equipment Schedule | | | CO9P30699220 | 6/13/2020 | 6/13/2021 | Limit<br>Value | 200,000<br>1,174,796 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
RE: Agreement No.: 2020-0001
As required by written contract or written agreement, Halo Services Inc. is included as Additional Insured under General Liability on a primary and non-contributory basis, and Additional Insured under Automobile Liability. As required by written contract or written agreement, Waivers of Subrogation in favor of the Additional Insured apply to General Liability, Automobile Liability and Workers' Compensation. Umbrella coverage is Follow Form to General Liability, Automobile Liability and Workers Compensation.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Halo Services Inc.<br>70 CR 4980<br>Bloomfield NM 87413 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br><br>AUTHORIZED REPRESENTATIVE |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD



7501 E. Lowry Blvd.
Denver, CO 80230-7006
303.361.4000 / 800.873.7242
Pinnacol.com

NCCI #: WC000313B
Policy #: 4217709

Western Gravel Constructors, LLC
3001 N Townsend Ave
Montrose, CO 81401-5946

CCIG
155 Inverness Drive West
Englewood, CO 80112
(303) 799-0110

**ENDORSEMENT:   Blanket Waiver of Subrogation**

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

**SCHEDULE**

To any person or organization when agreed to under a written contract or agreement, as defined  above and with the insured, which is in effect and executed prior to any loss.

Effective Date:July 8, 2020                Expires on: June 1, 2021
Pinnacol Assurance has issued this endorsement July 8, 2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# XTEND ENDORSEMENT FOR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE –** This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

**A.** Who Is An Insured – Unnamed Subsidiaries

**B.** Blanket Additional Insured – Governmental Entities – Permits Or Authorizations Relating To Operations

**C.** Incidental Medical Malpractice

**D.** Blanket Waiver Of Subrogation

**E.** Contractual Liability – Railroads

**F.** Damage To Premises Rented To You

**PROVISIONS**

**A. WHO IS AN INSURED – UNNAMED SUBSIDIARIES**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any of your subsidiaries, other than a partnership, joint venture or limited liability company, that is not shown as a Named Insured in the Declarations is a Named Insured if:

**a.** You are the sole owner of, or maintain an ownership interest of more than 50% in, such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal and advertising injury" caused by an offense committed:

**a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

**b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

For purposes of Paragraph **1.** of Section **II** – Who Is An Insured, each such subsidiary will be deemed to be designated in the Declarations as:

**a.** An organization other than a partnership, joint venture or limited liability company; or

**b.** A trust;

as indicated in its name or the documents that govern its structure.

**B. BLANKET ADDITIONAL INSURED – GOVERNMENTAL ENTITIES – PERMITS OR AUTHORIZATIONS RELATING TO OPERATIONS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any governmental entity that has issued a permit or authorization with respect to operations performed by you or on your behalf and that you are required by any ordinance, law, building code or written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of such operations.

The insurance provided to such governmental entity does not apply to:

**a.** Any "bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the governmental entity; or

**b.** Any "bodily injury" or "property damage" included in the "products-completed operations hazard".

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

## C. INCIDENTAL MEDICAL MALPRACTICE

**1.** The following replaces Paragraph **b.** of the definition of "occurrence" in the **DEFINITIONS** Section:

**b.** An act or omission committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

**2.** The following replaces the last paragraph of Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED**:

Unless you are in the business or occupation of providing professional health care services, Paragraphs **(1)(a)**, **(b)**, **(c)** and **(d)** above do not apply to "bodily injury" arising out of providing or failing to provide:

**(a)** "Incidental medical services" by any of your "employees" who is a nurse, nurse assistant, emergency medical technician or paramedic; or

**(b)** First aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employed or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

**3.** The following replaces the last sentence of Paragraph **5.** of **SECTION III – LIMITS OF INSURANCE**:

For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

**4.** The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

**Sale Of Pharmaceuticals**

"Bodily injury" or "property damage" arising out of the violation of a penal statute or ordinance relating to the sale of pharmaceuticals committed by, or with the knowledge or consent of, the insured.

**5.** The following is added to the **DEFINITIONS** Section:

"Incidental medical services" means:

**a.** Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages; or

**b.** The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

**6.** The following is added to Paragraph **4.b.**, **Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

This insurance is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to any of your "employees" for "bodily injury" that arises out of providing or failing to provide "incidental medical services" to any person to the extent not subject to Paragraph **2.a.(1)** of Section II – Who Is An Insured.

## D. BLANKET WAIVER OF SUBROGATION

The following is added to Paragraph **8.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of:

**a.** "Bodily injury" or "property damage" that occurs; or

**b.** "Personal and advertising injury" caused by an offense that is committed;

subsequent to the execution of the contract or agreement.

## E. CONTRACTUAL LIABILITY – RAILROADS

**1.** The following replaces Paragraph **c.** of the definition of "insured contract" in the **DEFINITIONS** Section:

**c.** Any easement or license agreement;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

**2.** Paragraph **f.(1)** of the definition of "insured contract" in the **DEFINITIONS** Section is deleted.

**F. DAMAGE TO PREMISES RENTED TO YOU**

The following replaces the definition of "premises damage" in the **DEFINITIONS** Section:

"Premises damage" means "property damage" to:

**a.** Any premises while rented to you or temporarily occupied by you with permission of the owner; or

**b.** The contents of any premises while such premises is rented to you, if you rent such premises for a period of seven or fewer consecutive days.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED
## (Includes Products-Completed Operations If Required By Contract)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any person or organization that you agree in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only:

**a.** With respect to liability for "bodily injury" or "property damage" that occurs, or for "personal injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement and while that part of the contract or agreement is in effect; and

**b.** If, and only to the extent that, such injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the written contract or agreement applies. Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

The insurance provided to such additional insured is subject to the following provisions:

**a.** If the Limits of Insurance of this Coverage Part shown in the Declarations exceed the minimum limits required by the written contract or agreement, the insurance provided to the additional insured will be limited to such minimum required limits. For the purposes of determining whether this limitation applies, the minimum limits required by the written contract or agreement will be considered to include the minimum limits of any Umbrella or Excess liability coverage required for the additional insured by that written contract or agreement. This provision will not increase the limits of insurance described in Section III – Limits Of Insurance.

**b.** The insurance provided to such additional insured does not apply to:

**(1)** Any "bodily injury", "property damage" or "personal injury" arising out of the providing, or failure to provide, any professional architectural, engineering or surveying services, including:

**(a)** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawings and specifications; and

**(b)** Supervisory, inspection, architectural or engineering activities.

**(2)** Any "bodily injury" or "property damage" caused by "your work" and included in the "products-completed operations hazard" unless the written contract or agreement specifically requires you to provide such coverage for that additional insured during the policy period.

**c.** The additional insured must comply with the following duties:

**(1)** Give us written notice as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, such notice should include:

**(a)** How, when and where the "occurrence" or offense took place;

**(b)** The names and addresses of any injured persons and witnesses; and

**(c)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**(2)** If a claim is made or "suit" is brought against the additional insured:

COMMERCIAL GENERAL LIABILITY

**(a)** Immediately record the specifics of the claim or "suit" and the date received; and

**(b)** Notify us as soon as practicable and see to it that we receive written notice of the claim or "suit" as soon as practicable.

**(3)** Immediately send us copies of all legal papers received in connection with the claim or "suit", cooperate with us in the investigation or settlement of the claim or defense against the "suit", and otherwise comply with all policy conditions.

**(4)** Tender the defense and indemnity of any claim or "suit" to any provider of other insurance which would cover such additional insured for a loss we cover. However, this condition does not affect whether the insurance provided to such additional insured is primary to other insurance available to such additional insured which covers that person or organization as a named insured as described in Paragraph **4.**, Other Insurance, of Section **IV** – Commercial General Liability Conditions.

    © 2018 The Travelers Indemnity Company. All rights reserved.    **CG D2 46 04 19**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY WITH OTHER INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**PROVISIONS**

**1.** The following is added to Paragraph **A.1.c.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

This includes any person or organization who you are required under a written contract or agreement between you and that person or organization, that is signed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, to name as an additional insured for Covered Autos Liability Coverage, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured".

**2.** The following is added to Paragraph **B.5.**, **Other Insurance** of **SECTION IV – BUSINESS AUTO CONDITIONS**:

Regardless of the provisions of paragraph a. and paragraph **d.** of this part **5. Other Insurance,** this insurance is primary to and non-contributory with applicable other insurance under which an additional insured person or organization is the first named insured when the written contract or agreement between you and that person or organization, that is signed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, requires this insurance to be primary and non-contributory.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS AUTO EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to the Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Limitations and exclusions may apply to these coverages. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

A. **BROAD FORM NAMED INSURED**

B. **BLANKET ADDITIONAL INSURED**

C. **EMPLOYEE HIRED AUTO**

D. **EMPLOYEES AS INSURED**

E. **SUPPLEMENTARY PAYMENTS – INCREASED LIMITS**

F. **HIRED AUTO – LIMITED WORLDWIDE COVERAGE – INDEMNITY BASIS**

G. **WAIVER OF DEDUCTIBLE – GLASS**

H. **HIRED AUTO PHYSICAL DAMAGE – LOSS OF USE – INCREASED LIMIT**

I. **PHYSICAL DAMAGE – TRANSPORTATION EXPENSES – INCREASED LIMIT**

J. **PERSONAL PROPERTY**

K. **AIRBAGS**

L. **NOTICE AND KNOWLEDGE OF ACCIDENT OR LOSS**

M. **BLANKET WAIVER OF SUBROGATION**

N. **UNINTENTIONAL ERRORS OR OMISSIONS**

**PROVISIONS**

A. **BROAD FORM NAMED INSURED**

The following is added to Paragraph **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any organization you newly acquire or form during the policy period over which you maintain 50% or more ownership interest and that is not separately insured for Business Auto Coverage. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

B. **BLANKET ADDITIONAL INSURED**

The following is added to Paragraph **c.** in **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any person or organization who is required under a written contract or agreement between you and that person or organization, that is signed and executed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, to be named as an additional insured is an "insured" for Covered Autos Liability Coverage, but only for damages to which

this insurance applies and only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured provision contained in Section **II**.

C. **EMPLOYEE HIRED AUTO**

1. The following is added to Paragraph **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

   An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

2. The following replaces Paragraph **b.** in **B.5.**, **Other Insurance**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

   **b.** For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

      **(1)** Any covered "auto" you lease, hire, rent or borrow; and

      **(2)** Any covered "auto" hired or rented by your "employee" under a contract in an "employee's" name, with your

 © 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

## D. EMPLOYEES AS INSURED

The following is added to Paragraph **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

## E. SUPPLEMENTARY PAYMENTS – INCREASED LIMITS

**1.** The following replaces Paragraph **A.2.a.(2)**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

**(2)** Up to $3,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**2.** The following replaces Paragraph **A.2.a.(4)**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $500 a day because of time off from work.

## F. HIRED AUTO – LIMITED WORLDWIDE COVERAGE – INDEMNITY BASIS

The following replaces Subparagraph **(5)** in Paragraph **B.7.**, **Policy Period, Coverage Territory**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

**(5)** Anywhere in the world, except any country or jurisdiction while any trade sanction, embargo, or similar regulation imposed by the United States of America applies to and prohibits the transaction of business with or within such country or jurisdiction, for Covered Autos Liability Coverage for any covered "auto" that you lease, hire, rent or borrow without a driver for a period of 30 days or less and that is not an "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**(a)** With respect to any claim made or "suit" brought outside the United States of America, the territories and possessions of the United States of America, Puerto Rico and Canada:

**(i)** You must arrange to defend the "insured" against, and investigate or settle any such claim or "suit" and keep us advised of all proceedings and actions.

**(ii)** Neither you nor any other involved "insured" will make any settlement without our consent.

**(iii)** We may, at our discretion, participate in defending the "insured" against, or in the settlement of, any claim or "suit".

**(iv)** We will reimburse the "insured" for sums that the "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, that the "insured" pays with our consent, but only up to the limit described in Paragraph **C.**, Limits Of Insurance, of SECTION II – COVERED AUTOS LIABILITY COVERAGE.

**(v)** We will reimburse the "insured" for the reasonable expenses incurred with our consent for your investigation of such claims and your defense of the "insured" against any such "suit", but only up to and included within the limit described in Paragraph **C.**, Limits Of Insurance, of SECTION II – COVERED AUTOS LIABILITY COVERAGE, and not in addition to such limit. Our duty to make such payments ends when we have used up the applicable limit of insurance in payments for damages, settlements or defense expenses.

**(b)** This insurance is excess over any valid and collectible other insurance available to the "insured" whether primary, excess, contingent or on any other basis.

**(c)** This insurance is not a substitute for required or compulsory insurance in any country outside the United States, its territories and possessions, Puerto Rico and Canada.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
**CA T3 53 02 15**

You agree to maintain all required or compulsory insurance in any such country up to the minimum limits required by local law. Your failure to comply with compulsory insurance requirements will not invalidate the coverage afforded by this policy, but we will only be liable to the same extent we would have been liable had you complied with the compulsory insurance requirements.

**(d)** It is understood that we are not an admitted or authorized insurer outside the United States of America, its territories and possessions, Puerto Rico and Canada. We assume no responsibility for the furnishing of certificates of insurance, or for compliance in any way with the laws of other countries relating to insurance.

## G. WAIVER OF DEDUCTIBLE – GLASS

The following is added to Paragraph **D.**, **Deductible**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

No deductible for a covered "auto" will apply to glass damage if the glass is repaired rather than replaced.

## H. HIRED AUTO PHYSICAL DAMAGE – LOSS OF USE – INCREASED LIMIT

The following replaces the last sentence of Paragraph **A.4.b.**, **Loss Of Use Expenses**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

However, the most we will pay for any expenses for loss of use is $65 per day, to a maximum of $750 for any one "accident".

## I. PHYSICAL DAMAGE – TRANSPORTATION EXPENSES – INCREASED LIMIT

The following replaces the first sentence in Paragraph **A.4.a.**, **Transportation Expenses**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

We will pay up to $50 per day to a maximum of $1,500 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type.

## J. PERSONAL PROPERTY

The following is added to Paragraph **A.4.**, **Coverage Extensions**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

**Personal Property**

We will pay up to $400 for "loss" to wearing apparel and other personal property which is:

**(1)** Owned by an "insured"; and

**(2)** In or on your covered "auto".

This coverage applies only in the event of a total theft of your covered "auto".

No deductibles apply to this Personal Property coverage.

## K. AIRBAGS

The following is added to Paragraph **B.3.**, **Exclusions**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

Exclusion **3.a.** does not apply to "loss" to one or more airbags in a covered "auto" you own that inflate due to a cause other than a cause of "loss" set forth in Paragraphs **A.1.b.** and **A.1.c.**, but only:

**a.** If that "auto" is a covered "auto" for Comprehensive Coverage under this policy;

**b.** The airbags are not covered under any warranty; and

**c.** The airbags were not intentionally inflated.

We will pay up to a maximum of $1,000 for any one "loss".

## L. NOTICE AND KNOWLEDGE OF ACCIDENT OR LOSS

The following is added to Paragraph **A.2.a.**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

Your duty to give us or our authorized representative prompt notice of the "accident" or "loss" applies only when the "accident" or "loss" is known to:

**(a)** You (if you are an individual);

**(b)** A partner (if you are a partnership);

**(c)** A member (if you are a limited liability company);

**(d)** An executive officer, director or insurance manager (if you are a corporation or other organization); or

**(e)** Any "employee" authorized by you to give notice of the "accident" or "loss".

## M. BLANKET WAIVER OF SUBROGATION

The following replaces Paragraph **A.5.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

**5. Transfer Of Rights Of Recovery Against Others To Us**

We waive any right of recovery we may have against any person or organization to the extent required of you by a written contract signed and executed prior to any "accident" or "loss", provided that the "accident" or "loss" arises out of operations contemplated by

COMMERCIAL AUTO

such contract. The waiver applies only to the person or organization designated in such contract.

**N. UNINTENTIONAL ERRORS OR OMISSIONS**

The following is added to Paragraph **B.2., Concealment, Misrepresentation, Or Fraud**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

The unintentional omission of, or unintentional error in, any information given by you shall not prejudice your rights under this insurance. However this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

© 2015 The Travelers Indemnity Compa ny. All rights reserved .
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CA T3 53 02 15**



7501 E. Lowry Blvd.
Denver, CO 80230-7006
303.361.4000 / 800.873.7242
Pinnacol.com

NCCI #: WC000313B
Policy #: 4217709

Western Gravel Constructors, LLC
3001 N Townsend Ave
Montrose, CO 81401-5946

CCIG
155 Inverness Drive West
Englewood, CO 80112
(303) 799-0110

**ENDORSEMENT:   Blanket Waiver of Subrogation**

We have the right to recover our payments from anyone liable for an injury covered by this policy. We will not enforce our right against the person or organization named in the Schedule. This agreement applies only to the extent that you perform work under a written contract that requires you to obtain this agreement from us.

This agreement shall not operate directly or indirectly to benefit anyone not named in the Schedule.

**SCHEDULE**

To any person or organization when agreed to under a written contract or agreement, as defined  above and with the insured, which is in effect and executed prior to any loss.

Effective Date:July 8, 2020           Expires on: June 1, 2021
Pinnacol Assurance has issued this endorsement July 8, 2020

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED
## (Includes Products-Completed Operations If Required By Contract)

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**PROVISIONS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any person or organization that you agree in a written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only:

**a.** With respect to liability for "bodily injury" or "property damage" that occurs, or for "personal injury" caused by an offense that is committed, subsequent to the signing of that contract or agreement and while that part of the contract or agreement is in effect; and

**b.** If, and only to the extent that, such injury or damage is caused by acts or omissions of you or your subcontractor in the performance of "your work" to which the written contract or agreement applies. Such person or organization does not qualify as an additional insured with respect to the independent acts or omissions of such person or organization.

The insurance provided to such additional insured is subject to the following provisions:

**a.** If the Limits of Insurance of this Coverage Part shown in the Declarations exceed the minimum limits required by the written contract or agreement, the insurance provided to the additional insured will be limited to such minimum required limits. For the purposes of determining whether this limitation applies, the minimum limits required by the written contract or agreement will be considered to include the minimum limits of any Umbrella or Excess liability coverage required for the additional insured by that written contract or agreement. This provision will not increase the limits of insurance described in Section III – Limits Of Insurance.

**b.** The insurance provided to such additional insured does not apply to:

**(1)** Any "bodily injury", "property damage" or "personal injury" arising out of the providing, or failure to provide, any professional architectural, engineering or surveying services, including:

**(a)** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders or change orders, or the preparing, approving, or failing to prepare or approve, drawings and specifications; and

**(b)** Supervisory, inspection, architectural or engineering activities.

**(2)** Any "bodily injury" or "property damage" caused by "your work" and included in the "products-completed operations hazard" unless the written contract or agreement specifically requires you to provide such coverage for that additional insured during the policy period.

**c.** The additional insured must comply with the following duties:

**(1)** Give us written notice as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, such notice should include:

**(a)** How, when and where the "occurrence" or offense took place;

**(b)** The names and addresses of any injured persons and witnesses; and

**(c)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**(2)** If a claim is made or "suit" is brought against the additional insured:

 © 2018 The Travelers Indemnity Company. All rights reserved.

COMMERCIAL GENERAL LIABILITY

**(a)** Immediately record the specifics of the claim or "suit" and the date received; and

**(b)** Notify us as soon as practicable and see to it that we receive written notice of the claim or "suit" as soon as practicable.

**(3)** Immediately send us copies of all legal papers received in connection with the claim or "suit", cooperate with us in the investigation or settlement of the claim or defense against the "suit", and otherwise comply with all policy conditions.

**(4)** Tender the defense and indemnity of any claim or "suit" to any provider of other insurance which would cover such additional insured for a loss we cover. However, this condition does not affect whether the insurance provided to such additional insured is primary to other insurance available to such additional insured which covers that person or organization as a named insured as described in Paragraph **4.**, Other Insurance, of Section **IV** – Commercial General Liability Conditions.

© 2018 The Travelers Indemnity Company. All rights reserved.
**CG D2 46 04 19**

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# XTEND ENDORSEMENT FOR CONTRACTORS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**GENERAL DESCRIPTION OF COVERAGE –** This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to this Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

**A.** Who Is An Insured – Unnamed Subsidiaries

**B.** Blanket Additional Insured – Governmental Entities – Permits Or Authorizations Relating To Operations

**C.** Incidental Medical Malpractice

**D.** Blanket Waiver Of Subrogation

**E.** Contractual Liability – Railroads

**F.** Damage To Premises Rented To You

**PROVISIONS**

**A. WHO IS AN INSURED – UNNAMED SUBSIDIARIES**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any of your subsidiaries, other than a partnership, joint venture or limited liability company, that is not shown as a Named Insured in the Declarations is a Named Insured if:

**a.** You are the sole owner of, or maintain an ownership interest of more than 50% in, such subsidiary on the first day of the policy period; and

**b.** Such subsidiary is not an insured under similar other insurance.

No such subsidiary is an insured for "bodily injury" or "property damage" that occurred, or "personal and advertising injury" caused by an offense committed:

**a.** Before you maintained an ownership interest of more than 50% in such subsidiary; or

**b.** After the date, if any, during the policy period that you no longer maintain an ownership interest of more than 50% in such subsidiary.

For purposes of Paragraph **1.** of Section **II** – Who Is An Insured, each such subsidiary will be deemed to be designated in the Declarations as:

**a.** An organization other than a partnership, joint venture or limited liability company; or

**b.** A trust;

as indicated in its name or the documents that govern its structure.

**B. BLANKET ADDITIONAL INSURED – GOVERNMENTAL ENTITIES – PERMITS OR AUTHORIZATIONS RELATING TO OPERATIONS**

The following is added to **SECTION II – WHO IS AN INSURED**:

Any governmental entity that has issued a permit or authorization with respect to operations performed by you or on your behalf and that you are required by any ordinance, law, building code or written contract or agreement to include as an additional insured on this Coverage Part is an insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" arising out of such operations.

The insurance provided to such governmental entity does not apply to:

**a.** Any "bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the governmental entity; or

**b.** Any "bodily injury" or "property damage" included in the "products-completed operations hazard".

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

COMMERCIAL GENERAL LIABILITY

**C. INCIDENTAL MEDICAL MALPRACTICE**

1. The following replaces Paragraph **b.** of the definition of "occurrence" in the **DEFINITIONS** Section:

   **b.** An act or omission committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to a person, unless you are in the business or occupation of providing professional health care services.

2. The following replaces the last paragraph of Paragraph **2.a.(1)** of **SECTION II – WHO IS AN INSURED**:

   Unless you are in the business or occupation of providing professional health care services, Paragraphs **(1)(a)**, **(b)**, **(c)** and **(d)** above do not apply to "bodily injury" arising out of providing or failing to provide:

   **(a)** "Incidental medical services" by any of your "employees" who is a nurse, nurse assistant, emergency medical technician or paramedic; or

   **(b)** First aid or "Good Samaritan services" by any of your "employees" or "volunteer workers", other than an employed or volunteer doctor. Any such "employees" or "volunteer workers" providing or failing to provide first aid or "Good Samaritan services" during their work hours for you will be deemed to be acting within the scope of their employment by you or performing duties related to the conduct of your business.

3. The following replaces the last sentence of Paragraph **5.** of **SECTION III – LIMITS OF INSURANCE**:

   For the purposes of determining the applicable Each Occurrence Limit, all related acts or omissions committed in providing or failing to provide "incidental medical services", first aid or "Good Samaritan services" to any one person will be deemed to be one "occurrence".

4. The following exclusion is added to Paragraph **2.**, **Exclusions**, of **SECTION I – COVERAGES – COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**:

   **Sale Of Pharmaceuticals**

   "Bodily injury" or "property damage" arising out of the violation of a penal statute or ordinance relating to the sale of pharmaceuticals committed by, or with the knowledge or consent of, the insured.

5. The following is added to the **DEFINITIONS** Section:

   "Incidental medical services" means:

   **a.** Medical, surgical, dental, laboratory, x-ray or nursing service or treatment, advice or instruction, or the related furnishing of food or beverages; or

   **b.** The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances.

6. The following is added to Paragraph **4.b.**, **Excess Insurance**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

   This insurance is excess over any valid and collectible other insurance, whether primary, excess, contingent or on any other basis, that is available to any of your "employees" for "bodily injury" that arises out of providing or failing to provide "incidental medical services" to any person to the extent not subject to Paragraph **2.a.(1)** of Section II – Who Is An Insured.

**D. BLANKET WAIVER OF SUBROGATION**

The following is added to Paragraph **8.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**:

If the insured has agreed in a contract or agreement to waive that insured's right of recovery against any person or organization, we waive our right of recovery against such person or organization, but only for payments we make because of:

**a.** "Bodily injury" or "property damage" that occurs; or

**b.** "Personal and advertising injury" caused by an offense that is committed;

subsequent to the execution of the contract or agreement.

**E. CONTRACTUAL LIABILITY – RAILROADS**

1. The following replaces Paragraph **c.** of the definition of "insured contract" in the **DEFINITIONS** Section:

   **c.** Any easement or license agreement;

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CG D3 16 02 19

COMMERCIAL GENERAL LIABILITY

**2.** Paragraph **f.(1)** of the definition of "insured contract" in the **DEFINITIONS** Section is deleted.

**F. DAMAGE TO PREMISES RENTED TO YOU**

The following replaces the definition of "premises damage" in the **DEFINITIONS** Section:

"Premises damage" means "property damage" to:

**a.** Any premises while rented to you or temporarily occupied by you with permission of the owner; or

**b.** The contents of any premises while such premises is rented to you, if you rent such premises for a period of seven or fewer consecutive days.

© 2017 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BLANKET ADDITIONAL INSURED – PRIMARY AND NON-CONTRIBUTORY WITH OTHER INSURANCE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**PROVISIONS**

1. The following is added to Paragraph **A.1.c.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

   This includes any person or organization who you are required under a written contract or agreement between you and that person or organization, that is signed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, to name as an additional insured for Covered Autos Liability Coverage, but only for damages to which this insurance applies and only to the extent of that person's or organization's liability for the conduct of another "insured".

2. The following is added to Paragraph **B.5.**, **Other Insurance** of **SECTION IV – BUSINESS AUTO CONDITIONS**:

   Regardless of the provisions of paragraph a. and paragraph **d.** of this part **5. Other Insurance,** this insurance is primary to and non-contributory with applicable other insurance under which an additional insured person or organization is the first named insured when the written contract or agreement between you and that person or organization, that is signed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, requires this insurance to be primary and non-contributory.

© 2016 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS AUTO EXTENSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

**GENERAL DESCRIPTION OF COVERAGE** – This endorsement broadens coverage. However, coverage for any injury, damage or medical expenses described in any of the provisions of this endorsement may be excluded or limited by another endorsement to the Coverage Part, and these coverage broadening provisions do not apply to the extent that coverage is excluded or limited by such an endorsement. The following listing is a general coverage description only. Limitations and exclusions may apply to these coverages. Read all the provisions of this endorsement and the rest of your policy carefully to determine rights, duties, and what is and is not covered.

**A. BROAD FORM NAMED INSURED**

**B. BLANKET ADDITIONAL INSURED**

**C. EMPLOYEE HIRED AUTO**

**D. EMPLOYEES AS INSURED**

**E. SUPPLEMENTARY PAYMENTS – INCREASED LIMITS**

**F. HIRED AUTO – LIMITED WORLDWIDE COVERAGE – INDEMNITY BASIS**

**G. WAIVER OF DEDUCTIBLE – GLASS**

**H. HIRED AUTO PHYSICAL DAMAGE – LOSS OF USE – INCREASED LIMIT**

**I. PHYSICAL DAMAGE – TRANSPORTATION EXPENSES – INCREASED LIMIT**

**J. PERSONAL PROPERTY**

**K. AIRBAGS**

**L. NOTICE AND KNOWLEDGE OF ACCIDENT OR LOSS**

**M. BLANKET WAIVER OF SUBROGATION**

**N. UNINTENTIONAL ERRORS OR OMISSIONS**

**PROVISIONS**

**A. BROAD FORM NAMED INSURED**

The following is added to Paragraph **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any organization you newly acquire or form during the policy period over which you maintain 50% or more ownership interest and that is not separately insured for Business Auto Coverage. Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**B. BLANKET ADDITIONAL INSURED**

The following is added to Paragraph **c.** in **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any person or organization who is required under a written contract or agreement between you and that person or organization, that is signed and executed by you before the "bodily injury" or "property damage" occurs and that is in effect during the policy period, to be named as an additional insured is an "insured" for Covered Autos Liability Coverage, but only for damages to which

this insurance applies and only to the extent that person or organization qualifies as an "insured" under the Who Is An Insured provision contained in Section **II**.

**C. EMPLOYEE HIRED AUTO**

**1.** The following is added to Paragraph **A.1.**, **Who Is An Insured**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

An "employee" of yours is an "insured" while operating an "auto" hired or rented under a contract or agreement in an "employee's" name, with your permission, while performing duties related to the conduct of your business.

**2.** The following replaces Paragraph **b.** in **B.5.**, **Other Insurance**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

**b.** For Hired Auto Physical Damage Coverage, the following are deemed to be covered "autos" you own:

**(1)** Any covered "auto" you lease, hire, rent or borrow; and

**(2)** Any covered "auto" hired or rented by your "employee" under a contract in an "employee's" name, with your

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

permission, while performing duties related to the conduct of your business.

However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**D. EMPLOYEES AS INSURED**

The following is added to Paragraph **A.1., Who Is An Insured,** of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow in your business or your personal affairs.

**E. SUPPLEMENTARY PAYMENTS – INCREASED LIMITS**

**1.** The following replaces Paragraph **A.2.a.(2)**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

**(2)** Up to $3,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

**2.** The following replaces Paragraph **A.2.a.(4)**, of **SECTION II – COVERED AUTOS LIABILITY COVERAGE**:

**(4)** All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $500 a day because of time off from work.

**F. HIRED AUTO – LIMITED WORLDWIDE COVERAGE – INDEMNITY BASIS**

The following replaces Subparagraph **(5)** in Paragraph **B.7., Policy Period, Coverage Territory**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

**(5)** Anywhere in the world, except any country or jurisdiction while any trade sanction, embargo, or similar regulation imposed by the United States of America applies to and prohibits the transaction of business with or within such country or jurisdiction, for Covered Autos Liability Coverage for any covered "auto" that you lease, hire, rent or borrow without a driver for a period of 30 days or less and that is not an "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households.

**(a)** With respect to any claim made or "suit" brought outside the United States of America, the territories and possessions of the United States of America, Puerto Rico and Canada:

**(i)** You must arrange to defend the "insured" against, and investigate or settle any such claim or "suit" and keep us advised of all proceedings and actions.

**(ii)** Neither you nor any other involved "insured" will make any settlement without our consent.

**(iii)** We may, at our discretion, participate in defending the "insured" against, or in the settlement of, any claim or "suit".

**(iv)** We will reimburse the "insured" for sums that the "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, that the "insured" pays with our consent, but only up to the limit described in Paragraph **C.,** Limits Of Insurance, of SECTION II – COVERED AUTOS LIABILITY COVERAGE.

**(v)** We will reimburse the "insured" for the reasonable expenses incurred with our consent for your investigation of such claims and your defense of the "insured" against any such "suit", but only up to and included within the limit described in Paragraph **C.,** Limits Of Insurance, of SECTION II – COVERED AUTOS LIABILITY COVERAGE, and not in addition to such limit. Our duty to make such payments ends when we have used up the applicable limit of insurance in payments for damages, settlements or defense expenses.

**(b)** This insurance is excess over any valid and collectible other insurance available to the "insured" whether primary, excess, contingent or on any other basis.

**(c)** This insurance is not a substitute for required or compulsory insurance in any country outside the United States, its territories and possessions, Puerto Rico and Canada.

© 2015 The Travelers Indemnity Company. All rights reserved.
Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CA T3 53 02 15

You agree to maintain all required or compulsory insurance in any such country up to the minimum limits required by local law. Your failure to comply with compulsory insurance requirements will not invalidate the coverage afforded by this policy, but we will only be liable to the same extent we would have been liable had you complied with the compulsory insurance requirements.

**(d)** It is understood that we are not an admitted or authorized insurer outside the United States of America, its territories and possessions, Puerto Rico and Canada. We assume no responsibility for the furnishing of certificates of insurance, or for compliance in any way with the laws of other countries relating to insurance.

**G. WAIVER OF DEDUCTIBLE – GLASS**

The following is added to Paragraph **D.**, **Deductible**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

No deductible for a covered "auto" will apply to glass damage if the glass is repaired rather than replaced.

**H. HIRED AUTO PHYSICAL DAMAGE – LOSS OF USE – INCREASED LIMIT**

The following replaces the last sentence of Paragraph **A.4.b.**, **Loss Of Use Expenses**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

However, the most we will pay for any expenses for loss of use is $65 per day, to a maximum of $750 for any one "accident".

**I. PHYSICAL DAMAGE – TRANSPORTATION EXPENSES – INCREASED LIMIT**

The following replaces the first sentence in Paragraph **A.4.a.**, **Transportation Expenses**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

We will pay up to $50 per day to a maximum of $1,500 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type.

**J. PERSONAL PROPERTY**

The following is added to Paragraph **A.4.**, **Coverage Extensions**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

**Personal Property**

We will pay up to $400 for "loss" to wearing apparel and other personal property which is:

**(1)** Owned by an "insured"; and

**(2)** In or on your covered "auto".

This coverage applies only in the event of a total theft of your covered "auto".

No deductibles apply to this Personal Property coverage.

**K. AIRBAGS**

The following is added to Paragraph **B.3.**, **Exclusions**, of **SECTION III – PHYSICAL DAMAGE COVERAGE**:

Exclusion **3.a.** does not apply to "loss" to one or more airbags in a covered "auto" you own that inflate due to a cause other than a cause of "loss" set forth in Paragraphs **A.1.b.** and **A.1.c.**, but only:

**a.** If that "auto" is a covered "auto" for Comprehensive Coverage under this policy;

**b.** The airbags are not covered under any warranty; and

**c.** The airbags were not intentionally inflated.

We will pay up to a maximum of $1,000 for any one "loss".

**L. NOTICE AND KNOWLEDGE OF ACCIDENT OR LOSS**

The following is added to Paragraph **A.2.a.**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

Your duty to give us or our authorized representative prompt notice of the "accident" or "loss" applies only when the "accident" or "loss" is known to:

**(a)** You (if you are an individual);

**(b)** A partner (if you are a partnership);

**(c)** A member (if you are a limited liability company);

**(d)** An executive officer, director or insurance manager (if you are a corporation or other organization); or

**(e)** Any "employee" authorized by you to give notice of the "accident" or "loss".

**M. BLANKET WAIVER OF SUBROGATION**

The following replaces Paragraph **A.5.**, **Transfer Of Rights Of Recovery Against Others To Us**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

**5. Transfer Of Rights Of Recovery Against Others To Us**

We waive any right of recovery we may have against any person or organization to the extent required of you by a written contract signed and executed prior to any "accident" or "loss", provided that the "accident" or "loss" arises out of operations contemplated by

COMMERCIAL AUTO

such contract. The waiver applies only to the person or organization designated in such contract.

**N. UNINTENTIONAL ERRORS OR OMISSIONS**

The following is added to Paragraph **B.2., Concealment, Misrepresentation, Or Fraud**, of **SECTION IV – BUSINESS AUTO CONDITIONS**:

The unintentional omission of, or unintentional error in, any information given by you shall not prejudice your rights under this insurance. However this provision does not affect our right to collect additional premium or exercise our right of cancellation or non-renewal.

© 2015 The Travelers Indemnity Compa ny. All rights reserved .
Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**CA T3 53 02 15**